UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEAFOU ISAIA,

              Plaintiff,

     v.

LELAND DUDEK, et al.,

              Defendants.

Case No.  24-cv-00864-AGT

**ORDER RESOLVING CLAIM FOR
REVIEW UNDER 42 U.S.C. § 405(g)**

Re: Dkt. Nos. 11, 13[1]

       Meafou Isaia seeks judicial review of an ALJ decision denying her applications for social security disability benefits. Finding that the ALJ's decision was supported by substantial evidence and free of legal error, *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017), the Court affirms.

       1. The record includes evidence of "ongoing depressive symptoms." AR 29. Forgetfulness, crying spells, lethargy, trouble concentrating, soft speech, a flat affect, and passive suicidal ideation are among them. *See* AR 27–28. The ALJ didn't discard or discredit this evidence; the ALJ held that Isaia's symptoms "warrant[ed] long term work restrictions." AR 29. But the ALJ also determined that Isaia's symptoms didn't require "total work preclusion." AR 32. Substantial evidence supported the ALJ's conclusion. *See Ahearn v. Saul*, 988

---

[1] Under the Supplemental Rules for Social Security Actions, the Court construes the parties' cross-motions for summary judgment as "briefs present[ing] the action for decision on the merits." Rule 5, 2022 Advisory Committee Note.

F.3d 1111, 1115 (9th Cir. 2021) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but may be less than a preponderance.") (quoting another source).

The ALJ highlighted the following evidence in reaching her determination:

- Psychiatrist Charles DeBattista observed that Isaia had a "linear thought process," AR 29, no "substantial issues regarding understanding, remembering, or carrying out simple instructions," AR 24, and "no greater than moderate impairment regarding the retained ability to maintain concentration, persistence, and pace," *id.*; s*ee also* AR 664–666 (Dr. DeBattista's report).

- "[C]linical findings normally described intact though[t] process, thought content, sensorium, cognition, and judgment along with concentration and attention being considered age appropriate." AR 28 (citing AR 479, 482).

- There was "no documented treatment from a neurologist or similar specialist that one would expect for concerns of dementia-like issues." AR 32.

- With ongoing medication management, Isaia reported "less frequent passive suicidal ideation." AR 28 (citing AR 682); *see also* AR 29 (citing AR 759).

- There was "no evidence of recommendations for inpatient treatment, emergency/crisis treatment, or frequent outpatient care." AR 31.

- Later primary care visits described "no significant worsening" of symptoms, with treatment continuing to consist of "medication management." AR 29 (citing AR 759–60); *see also* AR 770–772.

A reasonable mind might accept this evidence as adequate to support the ALJ's conclusion. *Ahearn*, 988 F.3d at 1115. With restrictions (e.g., "simple, detailed but not complex

tasks," only "occasional interaction with the public," AR 25), Isaia could work.

The record does include evidence of greater impairment. In 2020, a primary care physician said Isaia's depression was "severe," AR 484, and a nurse practitioner wrote that Isaia was "profoundly depressed," AR 668. But even these findings were based on symptoms the ALJ considered (the ALJ didn't overlook material evidence). And on balance, even if a different outcome was possible, the ALJ's determination was reasonable: "more than a mere scintilla" of evidence supported it. *Ahearn*, 988 F.3d at 1115 (quoting another source).

2. The ALJ discounted Isaia's testimony and Dr. Lipinsky DeGette's opinion, both of which supported Isaia's claim that she was too depressed to work. The ALJ held that this testimony and opinion were inconsistent with the overall medical record. *See* AR 30–32, 34. Substantial evidence supported the ALJ's analysis of the medical record, as noted above, and an ALJ may discredit a claimant's testimony or a doctor's opinion that is undercut by the overall medical record. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022); *Woods v. Kijakazi*, 32 F.4th 785, 792–93 (9th Cir. 2022). The ALJ didn't err.

3. In view of Isaia's depressive symptoms, the ALJ held that Isaia's work needed to be limited "to simple, detailed but not complex tasks," with "only occasional change in the work setting." AR 25. Isaia says the ALJ should have limited her to jobs with only one- or two-step instructions, an even greater restriction. *See Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) (explaining that "level-one jobs require only 'simple one- or two-step instructions' but level-two jobs require 'detailed but uninvolved . . . instructions.'" (omission in original) (quoting Dictionary of Occupational Titles, App. C, § III, 1991 WL 688702 (4th ed. 1991))). The ALJ wasn't required to do so.

Isaia's "clinical findings normally described intact though[t] process, thought

content, sensorium, cognition, and judgment along with concentration and attention being considered age appropriate." AR 28 (citing AR 479, 482). Given these findings, the ALJ reasonably determined that Isaia could perform jobs with more than one- or two-step instructions, so long as the work was simple and not complex.

Dr. DeBattista didn't dictate a categorical restriction to only one- to two-step tasks, as Isaia suggests. He opined that Isaia "may have trouble [with] detailed and complex instructions," AR 666, not that she couldn't do them. In any event, even if there's some tension between his proposed restrictions and the ALJ's, the ALJ's are supported by substantial evidence. Dr. DeBattista evaluated Isaia but didn't have access to any "accompanying medical or psychiatric records." AR 664. The ALJ had access to those records and reasonably concluded that her proposed limitations "better vocationally define[d] [Isaia's] retained abilities and reflect[ed] the level of conservati[ve] mental health care" she had received. AR 34.

4. Dr. DeBattista also opined that Isaia's "ability to relate and interact" with coworkers and the public was "moderately impaired." AR 666. Isaia faults the ALJ for failing to explain why, given that opinion, she held that Isaia could perform work requiring frequent interaction with coworkers and supervisors and occasional interaction with the public.

Given Isaia's "retained abilities" and "conservati[ve] mental health care," the ALJ adopted restrictions that "differ[ed] somewhat" from Dr. DeBattista's. AR 34. The ALJ didn't err in doing so. Isaia "interact[ed] well with [medical] providers, who generally described [her] as pleasant and cooperative, and no evidence suggested that she didn't get along with others "during prior employment." AR 24. This evidence supported the ALJ's finding that Isaia could frequently interact with coworkers and supervisors, while evidence of Isaia's depressive symptoms supported the restriction on her interactions with the public. "[E]ven

where the evidence of record is susceptible to more than one rational interpretation, we must defer to the Commissioner's interpretation of the evidence." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (simplified).

5. The ALJ didn't include any vision limitations in Isaia's residual functional capacity, even though state agency medical consultants noted that Isaia had limited left-eye acuity and left-eye depth perception. *See* AR 83, 130. Any error in this regard was harmless.

Isaia never said she couldn't work because of her vision, and several months before the ALJ hearing, her "[e]yes were checked," and she was given a "new glasses rx." AR 786. Furthermore, one of the exemplar jobs that the vocational expert identified, cleaner (DOT 323.687-010), doesn't have acuity or depth-perception requirements. *See* 1991 WL 672782. The vocational expert testified that there were approximately 48,000 cleaner jobs nationally, AR 65, a "significant number" that supports the ALJ's step-five decision. *Gutierrez v. Colvin*, 740 F.3d 519, 529 (9th Cir. 2014) (holding that 25,000 national jobs presented a "close call" but nevertheless constituted a "significant number of jobs").

\* \* \*

On the grounds stated above, the Court affirms the ALJ's decision and will separately enter judgment for the Social Security Commissioner.

**IT IS SO ORDERED.**

Dated: March 31, 2025

Alex G. Tse
United States Magistrate Judge